UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NEW YORK CITY & VICINITY DISTRICT
COUNCIL OF CARPENTERS,

                    Petitioner,

      -against-

LILCO CONSTRUCTION CORP.,

                    Respondent.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
18 CV 2695 (RRM) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

    On May 7, 2018, petitioner New York City & Vicinity District Council of Carpenters ("District Council" or "petitioner") commenced this action against LILCO Construction Corp. ("LILCO" or "respondent"), pursuant to Section 301(a) and (c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), (c), seeking to confirm an arbitration award rendered in favor of the District Council on May 8, 2017. Presently pending before this Court is petitioner's motion for entry of a default judgment confirming the award, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, granting summary judgment in favor of petitioner, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

    For the reasons set forth below, the Court respectfully recommends that judgment enter in favor of petitioner, confirming the arbitration award, as well as awarding additional interest, fees and costs.

---

[1] The motion was referred to the undersigned for a Report and Recommendation on November 20, 2019, by electronic order.

FACTUAL BACKGROUND

Petitioner District Council is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), with its office located at 395 Hudson Street, New York, N.Y. (Pet'n[2] ¶ 1). Respondent LILCO is incorporated under the laws of the State of New York, with its principal place of business located at 39-22 Bell Boulevard, 2d Floor, Bayside, New York. (Id. ¶ 2). LILCO is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. 152(2). (Id.)

The Petition alleges that at all relevant times, LILCO was bound to a Project Labor Agreement ("PLA") and a local agreement with the District Council (together, the "CBAs"). (Id. ¶ 5). The PLA provides for the arbitration of disputes that arise between the parties and designates Richard Adelman as the arbitrator to hear such disputes. (Id. ¶ 6). According to the Petition, LILCO failed to pay all bargaining unit members wages and benefits to which they were entitled for work performed at 200 Baychester Avenue, Bronx, N.Y. in June and July of 2014. (Id. ¶ 7). The dispute was referred to Arbitrator Adelman, who held a hearing on April 10, 2017. (Id. ¶¶ 7, 8). Despite due notice, LILCO failed to appear. (Id. ¶ 8). The Arbitrator heard testimony and received evidence from the District Council and rendered an opinion and award on May 8, 2017 (the "Award"). (Id., Ex. A[3]).

In the Award, the Arbitrator found that LILCO had violated the CBA as alleged, and he Ordered LILCO to make payments to the New York City District Council of Carpenters Benefit Funds (the "NYCDCC Funds") of designated amounts owed to specific individuals, along with

---

[2] Citations to "Pet'n." refer to the Petition to Confirm Arbitration Award filed by the District Council on May 7, 2018, ECF No. 1.
[3] Exhibit A to the Petition is a copy of the Arbitration Opinion and Award ("Award"), dated May 8, 2017, ECF No. 1-1.

a separate payment of wages owed to Carpenter Antonio Rivera. (Id. ¶¶ 9, 10, Ex. A). The Award also Ordered LILCO to pay the NYCDCC Funds $8,623.12 in liquidated damages and $3,037.21 in interest, and Ordered LILCO to pay $900, which represents LILCO's half of the Arbitrator's fee. (Id. ¶¶ 10, Ex. A)

The District Council filed the instant petition on May 7, 2018 after LILCO failed to satisfy its obligations under the Award. (Id. ¶ 11). Petitioner alleges that the Award has not been vacated or modified and is still in full force and effect. (Id. ¶ 12).

In its prayer for relief, petitioner seeks an Order confirming the May 8, 2017 Award in its entirety, directing LILCO to pay: 1) $1,047.48 on behalf of Antonio Rivera; 2) $43,194.40 in benefit funds contributions; 3) $8,623.12 in liquidated damages; 4) $3,037.21 in interest; 5) $900 toward the Arbitrator's fee; and 6) reasonable attorneys' fees and costs associated with the District Council's enforcement of the judgment in this matter.

## PROCEDURAL HISTORY

Following the filing of the Petition on May 7, 2018,[4] the petitioner made several unsuccessful attempts to serve the Summons and Petition at all known addresses for both LILCO and its principal. (Sigelakis Aff. ¶ 7). When petitioner attempted service on LILCO's registered agent and the Secretary of State, both indicated that they were no longer authorized to accept service on behalf of LILCO. (Id., ¶ Exs. 2[5], 3). On April 16, 2019, petitioner then

---

[4] The Affidavit of Lydia Sigelakis, Esq. in Support of Petition to Confirm Arbitration Award, dated November 12, 2019, ECF No. 20 ("Sigelakis Aff."), states that the Petition was filed on May 7, 2017. (Sigelakis Aff. ¶ 6). However, this appears to be a typographical error, since the Petition was actually filed in this Court on May 7, 2018. (See Pet'n).

[5] Exhibit 2 to the Affidavit of Lydia Sigelakis, Esq. is a copy of the process server's receipt, indicating the process server's inability to obtain a current address for LILCO. Exhibit 3 is a January 4, 2020 letter from Business Filings Incorporated indicating that the Secretary of State can no longer take filings for LILCO.

3

obtained authorization from this Court to serve LILCO by substituted service (see Order, ECF No. 9), and on August 6, 2019, this Court Ordered that service had been completed. (Id. ¶ 8, Ex. 4[6]).

When LILCO failed to answer the Petition and did not otherwise appear in the action, the Clerk of Court entered a Certificate of Default on October 28, 2019. (Id. ¶ 16, Ex. 8[7]). Petitioner then moved for entry of a default judgment on November 12, 2019. On November 20, 2019, the motion was referred to the undersigned to prepare a Report and Recommendation.

## DISCUSSION

I. Default Judgment

A. Default Judgment

Petitioner moves for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. On October 28, 2019, the Clerk of Court entered a default after LILCO failed to plead or otherwise defend against the instant petition. See Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a determination as to damages. See Fed. R. Civ. P. 55(b). That said, while "the court must ensure that there is a basis for the

---

[6] Exhibit 4 is a copy of this Court's Electronic Order, dated 8/6/2019, stating that "[t]he Court Orders that service is complete."
[7] Exhibit 8 is a copy of the Certificate of Default, dated October 28, 2019.

4

damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989); see also Transportes Aereos de Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, ensuring if at all possible that both parties may have their cases judged on the merits. Id. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the

5

delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (4th ed. 2020).

B. Confirmation of Arbitration Awards

Arbitration awards are given "force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." Trustees of the Bldg. Trades Annuity Fund, Educ. Fund, Welfare Fund v. New York Elec. Grp., Inc., No. 11 CV 3801, 2012 WL 4328632, at *2 (E.D.N.Y. Mar. 21, 2012) (quotation marks and citations omitted), report and recommendation adopted, 2012 WL 4328583 (E.D.N.Y. Sept. 19, 2012). In Blair & Co., Inc. v. Gottdiener, the Second Circuit instructed district courts to treat motions for default judgment on confirmation of arbitration awards as they would motions for summary judgment. 462 F.3d 95, 109-10 (2d Cir. 2006). The court held that "Rule 55 does not operate well in the context of a motion to confirm . . . an arbitration award," and, therefore, the summary judgment standard is more appropriate, since arbitration proceedings act as a form of court record, documenting the positions of both sides in a case. Id. at 107, 109.

In reviewing an arbitrator's decision, the court's role is limited. "The Second Circuit has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." Trustees of the N.Y. City Dist. Council of Carpenters Pension Fund v. Ameri-Can Concrete Solutions, Inc., No. 13 CV 4714, 2014 U.S. Dist. LEXIS 175002, at *7 (S.D.N.Y. Dec. 18, 2014) (internal quotations and citations omitted). "[A]n award based on an arbitrator's interpretation of a

6

collective bargaining agreement should be confirmed, even if the court disagrees with the factual findings or legal conclusions." Local Union No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Canada v. JPP Plumbing, No. 12 CV 2034, 2014 U.S. Dist. LEXIS 42447, at *5-6 (E.D.N.Y. Mar. 27, 2014). District courts treat unopposed motions to enforce an arbitrator's award as they would unopposed summary judgment motions. Trustees of the Bldg. Trades Annuity Fund, Educ. Fund Welfare Fund v. New York Elec. Grp., Inc., 2012 WL 4328632, at *2 (citing Herrenknecht Corp. v. Best Road Boring, No. 06 CV 5106, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007)). Accordingly, courts generally use the "Blair standard" to defer to an arbitrator's award, see id. (noting that "it is well established that courts must grant an [arbitrator's] decision great deference" (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003) (alteration in original)), and confirm the award so long as the arbitrator provided "a barely colorable justification for the outcome reached . . . ." Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Stain Less, Inc., No. 07 CV 3202, 2008 WL 782758, at *1 (E.D.N.Y. Mar. 20, 2008) (quoting Blair & Co., Inc. v. Gottdiener, 462 F.3d at 110).

    C.  Entry of Default Judgment

Here, petitioner's application to confirm the arbitration award must be judged according to the Blair standard. Petitioner has alleged a claim under the CBA, which requires the employer to pay wages and make contributions under the terms of the agreement. In seeking to enforce the Arbitration Award, petitioner has submitted to the Court a copy of the Arbitrator's Award. (Pet'n, Ex. A, cited as "Award").

Petitioner's application asserts that, pursuant to the PLA and a local agreement with the District Council, respondent was required to pay all bargaining unit members all wages and

7

benefits to which they were entitled for work performed at 200 Baychester Avenue in the Bronx (the "Baychester project"). (Sigelakis Aff. ¶ 11). The Union, which was also a signatory to the PLA, believed that LILCO had failed to comply with the PLA and filed a grievance seeking a remedy. (Award at 2). According to the Arbitrator's Opinion and Award, dated May 8, 2017, the Union established that a number of bargaining unit employees were on the Baychester project between June 24, 2014 and July 21, 2014, performing work within the jurisdiction of the Union. (Id.) Although LILCO paid wages for most of the employees working on the Baychester project during that period, the Arbitrator found that Antonio Rivera was not paid for 21 hours that he worked in June 2014. (Id.) However, the Arbitrator also found that LILCO had failed to pay benefits due to these employees as required by the PLA. (Id.) While plaintiff has not submitted copies of the full CBA on which the Arbitrator relied, "there is no indication that the arbitrator misinterpreted these materials or otherwise acted arbitrarily, in excess of his power, or contrary to law." Dolan v. Barile Mech., Inc., 933 F. Supp. 2d 634, 639 (S.D.N.Y. 2013).

In seeking to enforce the Arbitration Award, petitioner alleges that respondent has failed to make the payments ordered by the Arbitrator's Award. (Sigelakis Aff. ¶ 14). Petitioner alleges that the respondent's failure to meet these obligations warrants relief. Thus, petitioner has sufficiently alleged a claim that the defendant breached its statutory and contractual obligations under both ERISA and the CBA. Reviewing the Arbitrator's Award under the Blair standard, giving due deference to the Arbitrator's interpretation of the requirements under the PLA, and based on (1) a review of the allegations in the petition, which are undisputed at this time, and (2) supporting documentation submitted in connection with this inquest, the Court finds that petitioner has sufficiently stated all of the elements necessary to establish liability

8

under the CBA.  See 29 U.S.C. § 1132(g)(2).

Indeed, the respondent in this case has failed to provide any evidence to refute petitioner's claims.  It is beyond dispute that respondent is in default, since respondent failed to file an answer to the Petition, failed to oppose petitioner's motion for a default judgment, and failed to challenge the Court's entry of a default.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (noting that defendant's failure to oppose plaintiff's motion for a default judgment made the defendant's default "crystal clear"). Moreover, respondent has declined to obtain counsel, which constitutes a failure to defend because a corporation cannot proceed pro se in federal court.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given that petitioner has duly served all orders and motions on respondent in accordance with this Court's order authorizing alternative service, and that respondent has refused to attend any hearing or move in any way whatsoever with respect to the instant case – or, for that matter, participate in the arbitration hearing – this Court respectfully recommends that default judgment be granted against respondent.  As numerous opportunities have been afforded to respondent, and as it apparently lacks interest in participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment.

D.  Damages Awards in Default Judgments

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  See Au Bon Pain Corp. v.

9

Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).  At an inquest, the plaintiff still has the burden of proving damages, either by an evidentiary hearing or, should a defendant fail to appear, exhibits submitted by the plaintiff.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988).

Petitioner has submitted copies of the Arbitrator's award to the Court. When an arbitration award constitutes the basis for a party's claim to damages, the Second Circuit has stated:

> Confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected . . . The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case.

D.H. Blair & Co. v. Gottdiener, 462 F.3d at 110 (citing Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991); and 9 U.S.C. § 9 (internal quotations and citations omitted)).  Accordingly, in evaluating the petition to confirm the result of the arbitration, the Court need only ensure that the arbitrator had some grounds on which to grant the damages spelled out in the award.

II.  Arbitrator's Award

In this case, the Arbitrator found that LILCO was required to pay Antonio Rivera $1,047.48 for 21 hours of work at the rate of $49.88 per hour, and that the District Council was

10

owed for 985 hours of contributions at a rate of $44.56 per hour for the designated employees,[8] for a total of $43,194.40.[9] (Sigelakis Aff. ¶ 13; Award at 2). The Arbitrator also concluded that under the terms of the PLA, LILCO was obligated to pay the District Council liquidated damages of 20% of the delinquent contributions "plus interest 'calculated at the prime lending rated of Citibank plus 200 basis points, compounded daily,'" which meant that LILCO owed the District Council $8,623.12 in liquidated damages and $3,037.21 in interest, and $900 for its half of the arbitrator's fee. (Award at 2, 3). Finally, the Arbitrator directed the parties to share the cost of the Arbitrator's fee of $1,800 evenly, with each party contributing $900, pursuant to the terms of PLA. (Id. at 4).

Based on a review of the papers submitted in support of the Petition to Confirm the Arbitration Award, the Court respectfully recommends that the Award, totaling $55,902,[10] be

---

[8] This amount was broken down, per employee, as follows: $6,683.76 for Henrick Adams; $4,557.48 for Nicholas Bordone; $2,762.24 for Dennis Carroll; $4,945.92 for Kenneth Coyne; $302.12 for Malik Driskell; $1,337.96 for Christopher Falletta; $388.44 for Daniel Fleming; $302.12 for Franciszek Glowczynski; $1,381.12 for Tahj Johnson; $388.44 for Peter Joseph; $8,066.28 for Lanty Molloy; $5,214.44 for Patrick Murphy; $388.44 for Neilon Peters; $906.36 for Antonio Rivera; $3,798.08 for Michael Semeniw; and $1,771.20 for Robert Sneddon. (Award at 3-4). The payments are based on each worker's hours, which total 985 hours. (See id.). The Court calculates that these payments total $43,194.40.

[9] The Arbitrator calculated that 985 hours at a rate of $44.56 per hour totaled $43,194.40. By the Court's calculation, 985 hours at a rate of 44.56 per hour should yield a total of $43,891.60 in owed contributions. The Court cannot explain the $697.20 difference; however, "this Court is not prepared to recommend that the arbitration award be modified to reflect any sum higher than that actually awarded." Trustees of Unite Here Nat. Health Fund v. Am. Leather Prod., L.L.C., No. 06 CV 5316, 2009 WL 5178004, at *8 (S.D.N.Y. Dec. 31, 2009); see also Local Union No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the United States & Can. v. JPP Plumbing, LLC, No. 12 CV 2034, 2014 U.S. Dist. LEXIS 42447, at *6 (E.D.N.Y. Mar. 27, 2014) (noting that "[g]enerally, an award based on an arbitrator's interpretation of a collective bargaining agreement should be confirmed, even if the court disagrees with the factual findings. . .").

[10] Based on the itemized list in the Arbitrator's award, the Court had calculated the total award as $56,802.21. However, petitioner's memorandum listed the total award as $55,902. (Pet'r Mem. at 1). The Court cannot explain the $900.21 difference in totals, and the arbitration

11

confirmed.

B. <u>Interest</u>

In addition, petitioner seeks to collect interest on the Award from May 8, 2017, the date of the Award, until the date of judgment. (Pet'r Mem.[11] at 7). In seeking confirmation of the arbitrator's Award, petitioner seeks interest at the New York statutory rate of nine percent (9%) until the date of judgment, and post-judgment interest pursuant to 28 U.S.C. § 1961(a). (<u>Id.</u>) Interest under 28 U.S.C. § 1961(a) is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Generally, plaintiffs are entitled to collect interest on the total amount of the arbitrator's Award from the date of the arbitration award to the date of judgment. <u>See, e.g.</u>, <u>Trustees of Unite Here Nat'l Health Fund v. Am. Leather Prods., LLC</u>, No. 06 CV 5316, 2009 WL 5178004, at *9 (Dec. 31, 2009 S.D.N.Y.) (awarding prejudgment interest on arbitration award); <u>New York City Dist. Council of Carpenters Pension Fund v. E. Millennium Constr., Inc.</u>, No. 03 CV 5122, 2003 WL 22773355, at *4 (S.D.N.Y. Nov. 21, 2003) (same).

In this case, the Arbitrator specifically found that under the terms of the PLA, LILCO was required to pay interest calculated at the prime lending rate of Citibank, plus 200 basis points, compounded daily. (Award at 2). Accordingly, the Court respectfully recommends that petitioner be awarded interest calculated from May 8, 2017 until the date of judgment at the

---

award itself does not give a final total. (<u>See</u> Award). The Court thus respectfully recommends that deference be given to petitioner's calculation.

[11] Citations to "Pet'r Mem." refer to Petitioner's Memorandum of Law in Support of Petition to Confirm Arbitration Award, dated November 12, 2019, ECF No. 19.

12

statutory rate of nine percent (9%),[12] and that post-judgment interest also be awarded calculated at the rate as described in 28 U.S.C. § 1961(a).[13]

IV. Attorney's Fees and Costs

Petitioner also seeks an award of attorney's fees and costs. (Sigelakis Aff. ¶ 18). When a party fails to abide by an arbitrator's decision "without justification," attorney's fees and costs may be awarded. See International Chemical Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985); see also N.Y. City Dist. Council of Carpenters Pension Fund v. Allboro Drywall Syst., Inc., No. 10 CV 805, 2010 WL 3785268, at *3 (S.D.N.Y. Aug. 19, 2010).

In this case, plaintiffs seek $3,300 in attorney's fees, representing 1.2 hours of work billed at $250 an hour, and 10 hours billed at $300 per hour. (Pet'r Mem. at 4, 6). "The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorney's fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) report & recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)),; see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522

---

[12] A 9% statutory interest rate on an award of $56,802.21 is equal to interest of $14.01 per day. As 1,171 days have elapsed between May 8, 2017 and July 21, 2020, the total interest owed as of July 21, 2020 would be $16,405.71.

[13] At the time of writing, those rates may be found on the website of the Board of Governors of the Federal Reserve System at https://www.federalreserve.gov/releases/h15/.

F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably spent on the case" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorney's fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.]

14

factors to reflect consideration of any special circumstances."[14] 2012 WL 676350, at *5, n.8. The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. at 437. In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "a district court's choice of rates is well within its discretion") (internal quotation omitted). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located). Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be

---

[14] The Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).

willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012).  In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar claims.

Petitioner's counsel, Lydia Sigalakis, has submitted an affidavit detailing the nature of her experience as the attorney performing the work.  Specifically, Ms. Sigelakis, states that she is a 2002 graduate of Fordham Law School and a partner at the firm of Spivak Lipton LLP.  (Sigelakis Aff. ¶ 19).  She represents that for the past 14 years, her legal practice has been devoted almost entirely to the representation of labor unions and employee benefit plans.  (Id.) Petitioner has submitted contemporaneous billing records, as required by New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), showing the hours worked and the rates charged.  (Id. ¶ 21, Ex. 9).  Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rates of $250 and $300[15] per hour are not unreasonable in light of the rates normally charged in the Eastern District of New York, particularly given the small number of hours charged.  See, e.g., LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011), report and recommendation adopted, 2011 WL

---

[15] As counsel explains in her Affidavit, the rate charged for her services was $250 an hour from January 2012 through June 31, 2018, at which time the rate increased to $300 per hour.  (Sigelakis Aff. ¶ 20).

5825785 (E.D.N.Y. Nov. 16, 2011) (approving rate of $280 per hour for work by associate in ERISA litigation, including summary judgment motion); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $275 per hour for associate in ERISA withdrawal liability case, but noting that this rate was on the "higher end" for the Eastern District); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding partners' fees of $280 and $390 per hour reasonable in ERISA litigation); Finkel v. Architcraft Inc., No. 08 CV 4597, 2010 WL 1257773, at *3 (E.D.N.Y. Feb. 24, 2010) (finding an associate's hourly fee of $275 per hour and a partner's fee of $370 per hour to be reasonable in an ERISA action); Council of Carpenters Pension Fund v. Quantum Constr., No. 06 CV 13150, 2008 WL 5159777, at *13 (S.D.N.Y. June 19, 2008) (awarding $300 per hour for associate time upon entry of a default judgment in an ERISA delinquent contribution case).

Having determined the rates to be charged in this case, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009). If the number of hours billed is determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Here, petitioner only seeks compensation for 11.2 hours of work. Based on the de minimis number of hours charged in this matter, the Court finds the requested hours to be reasonable. Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that petitioner be awarded $3,300 in

17

requested attorney's fees. (See Pet'r Mem. at 6).

Finally, petitioner asks to be reimbursed for $854.53 in costs, including a $400 filing fee, a service fee of $439.13, and United Parcel costs of $15.40. (Sigelakis Aff. ¶ 22, Ex. 10[16]; Pet'r Mem. at 6-7). In support of this request, counsel submitted a summary of all the expenses incurred in this case. (Id.) Petitioner is entitled to "reasonable . . . costs of the action" under 29 U.S.C. § 1132(g)(2)(D). See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (awarding $818.53 in costs for filing fees, service, postage, and photocopying); see also Morin v. Nu-Way Plastering, Inc., No. 03 CV 405, 2005 WL 3470371, at *4 (E.D.N.Y. Mar. 30, 2015) (awarding certain costs when movant provided an "itemized list" of the costs incurred in the case).

The Court has reviewed petitioner's costs in this case. The Court notes that petitioner attempted to effectuate service on various addresses, on the New York Secretary of State, and the registered agent for service, which helps to explain the relatively high charge for process service. (See Sigelakis Aff. ¶¶ 7, 8). Finding the costs relating to this action to be reasonable, the Court respectfully recommends that petitioner be awarded $854.53 in costs.

## CONCLUSION

Accordingly, it is respectfully recommended that: 1) the Arbitration Award be confirmed, and that petitioner be further awarded 2) an additional $3,300 in attorney's fees; 3) $854.53 in costs. The Court further respectfully recommends that petitioner's request for pre-judgment interest, at a rate of 9% from May 8, 2017 until the date of final judgement, be awarded, and post-judgment interest be granted, calculated at the applicable rate pursuant to 28 U.S.C. § 1961(a).

Any objections to this Report and Recommendation must be filed with the Clerk of the

---

[16] Exhibit 10 shows an itemized record of counsel's costs in this matter.

18

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
July 21, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

19